**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

| | | |
|---|---|---|
| JOHNNY HOWARD BASS, *Reg. #56467-180* | * * * | |
| Petitioner, | * | |
| v. | * | No. 2:23-cv-00094-JJV |
| | * | |
| CHAD GARRETT, *Warden* FCI – Forrest City | * * * | |
| Respondent. | | |

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION

On September 13, 2006, Johnny Howard Bass ("Petitioner") pleaded guilty to three controlled substance offenses and the United States District Court for the Western District of Texas, Waco Division, sentenced him to one hundred and forty (140) months' imprisonment on each count to be served concurrently. (Doc. No. 8-1 at 1-2). His term of imprisonment was followed by eight years of supervised release. (*Id*. at 3.) While on supervised release, the Court filed a Petition for Warrant or Summons for Offender Under Supervision, alleging Mr. Bass committed multiple violations of the terms of his release. (Doc. 8-2 at 1-2.) On February 5, 2020, in the United States District Court for the Western District of Texas, Waco Division, found Mr. Bass violated the terms of his supervised release and sentenced him to thirty (30) months' imprisonment. (*Id*. at 2.)

While serving that sentence, Mr. Bass was indicted again and pleaded guilty to one count of Possession with Intent to Distribute at Least 50 Grams of Methamphetamine. (Doc. No. 8-3 at 1.) On December 16, 2020, the United States District Court for the Western District of Texas, Waco Division, sentenced him to seventy (70) months' imprisonment followed by five (5) years of

supervised release. (*Id*. at 2-3). Sentencing judge United States District Judge Alan Albright ordered that the seventy-month sentence be run concurrent with his thirty-month supervised release revocation sentence. (*Id*. at 2.)

The BOP first calculated Mr. Bass' projected release date to be December 17, 2024. (Doc. No. 2 at 19.) For reasons discussed below, the BOP subsequently recalculated Mr. Bass' sentence and determined his projected release date to be September 11, 2025. (Doc. No. 2 at 15.)

Mr. Bass brings the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 *pro se*. (Doc. Nos. 1, 2.) He asks this Court to "restore his projected release date to" December 17, 2024, "the date that was initially scheduled prior to the recalculation of his sentence".[1] (Doc. No. 2 at 7.) The United States responded and seeks dismissal of the Petition because the BOP correctly recalculated his projected release date. (Doc. No. 8 at 5-6.)

After careful review of the Petition, Response and accompanying evidence, for the following reasons, I find that Petition must be DISMISSED with prejudice.

II.   ANALYSIS

In calculating Mr. Bass' projected release date, the BOP's initial calculation was December 17, 2024. (Doc. No. 2 at 19.) Realizing an error was made in the initial calculation, the BOP recalculated his projected release date to be September 11, 2025. (*Id*. at 15.) Understandably, Mr. Bass asks this Court to restore his projected release date to the earlier date of December 17, 2024. (*Id*. at 7.) Each projected release calculation is addressed in turn.

  a. *Projected Release Date of September 11, 2025*

18 U.S.C. § 3584 governs the calculation of Mr. Bass' sentence in this case. 18 U.S.C. §

---

[1] The Court, like Respondent, assumes for the purposes of this Memorandum and Order that the December 17, 2024, release date sought by Petitioner does not include credit he has likely accrued pursuant to the First Step Act.

3584 determines what happens when an individual is sentenced to multiple terms of imprisonment. Pursuant to § 3584(c), "multiple terms of imprisonment ordered to run…concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."  The BOP has adopted this exact language in Program Statement 5880.28(e)(2) and interprets § 3584(c) to mean that "sentences, including a term of imprisonment that results from a revocation of supervised release…shall be aggregated to form a single sentence for computation purposes."  Dept. of Justice, BOP, Program Statement No. 5880.28: Sentence Computation Manuel (July 19, 1999). And that is exactly what the BOP did in its recalculation of Mr. Bass' sentence.

On February 5, 2020, he was sentenced to thirty (30) months' imprisonment for having violated the terms of his supervised release.  (Doc. No. 8-2 at 2.)  Thirty months from February 5, 2020, places Mr. Bass' projected release date on August 5, 2022.  There are 912 days between February 5, 2020, and August 5, 2022.

On December 16, 2020, Mr. Bass was sentenced to an additional seventy (70) months' imprisonment to be run concurrent with his thirty (30) month supervised release revocation sentence.  (Doc. No. 8-3 at 2.)  Seventy months from December 16, 2020, places Mr. Bass' projected release date on October 16, 2026.  There are 2,130 days between December 16, 2020, and October 16, 2026.  And as of December 16, 2020 - the date he was sentenced on the new offense- Mr. Bass had served 315 days of his thirty-month (912-day) supervised release revocation sentence.  Accordingly, 597 days remained on his thirty-month sentence.

On August 5, 2022, Mr. Bass was discharged from his thirty-month supervised release revocation sentence and began serving the remaining time on his seventy-month sentence.  At that time, 1,533 days remained on his seventy-month sentence.  And according to the BOP, Mr. Bass had accrued 307 days of good time credit and 92 days of pre-sentence credit.  (Doc. No. 2 at 15.)

Subtracting a total of 399 days from the remaining 1,533 days, Mr. Bass had 1,134 days remaining on his sentence. Counting 1,134 days from August 5, 2022, puts Mr. Bass' projected release date on September 12, 2025.[2] Accordingly, the BOP's recalculation of Mr. Bass' projected release date was correctly calculated to be September 11, 2025.

      b. *Projected Release Date of December 17, 2024*

Regarding the BOP's initial calculation of Mr. Bass' projected release date as December 17, 2024, it is somewhat unclear from the BOP's calculation sheet how exactly it arrived at that date. However, it does appear that the error lies in the BOP awarding Mr. Bass credit toward his seventy-month sentence for the time he served on his thirty-month sentence. Respondent is correct that it appears from the December 17, 2024, calculation sheet that the BOP awarded Mr. Bass 407 days of credit toward his seventy-month sentence – 92 days of presentence credits and 315 days of credit for the time he spent serving his thirty-month sentence. (Doc. No. 2 at 19.) This error is also apparent because the calculation sheet shows the BOP awarded Mr. Bass jail credit on his seventy-month sentence up until December 15, 2020, the day before his seventy-month sentence commenced.

This was in error. For 18 U.S.C. § 3585(b) provides, "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed that has not been credited against

---

[2] The Court finds the one-day discrepancy between the Court's September 12, 2025, date and the BOP's September 11, 2025, date to be minor and one that does not impact the Court's substantive finding that the BOP's September 11, 2025, date is correct. And the BOP's projected release date is more favorable to Petitioner.

Subtracting a total of 399 days from the remaining 1,533 days, Mr. Bass had 1,134 days remaining on his sentence. Counting 1,134 days from August 5, 2022, puts Mr. Bass' projected release date on September 12, 2025.[2] Accordingly, the BOP's recalculation of Mr. Bass' projected release date was correctly calculated to be September 11, 2025.

    b. *Projected Release Date of December 17, 2024*

Regarding the BOP's initial calculation of Mr. Bass' projected release date as December 17, 2024, it is somewhat unclear from the BOP's calculation sheet how exactly it arrived at that date. However, it does appear that the error lies in the BOP awarding Mr. Bass credit toward his seventy-month sentence for the time he served on his thirty-month sentence. Respondent is correct that it appears from the December 17, 2024, calculation sheet that the BOP awarded Mr. Bass 407 days of credit toward his seventy-month sentence – 92 days of presentence credits and 315 days of credit for the time he spent serving his thirty-month sentence. (Doc. No. 2 at 19.) This error is also apparent because the calculation sheet shows the BOP awarded Mr. Bass jail credit on his seventy-month sentence up until December 15, 2020, the day before his seventy-month sentence commenced.

This was in error. For 18 U.S.C. § 3585(b) provides, "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed that has not been credited against

---

[2] The Court finds the one-day discrepancy between the Court's September 12, 2025, date and the BOP's September 11, 2025, date to be minor and one that does not impact the Court's substantive finding that the BOP's September 11, 2025, date is correct. And the BOP's projected release date is more favorable to Petitioner.

another sentence." When Mr. Bass was sentenced to seventy-months on the new offense, he had not been in custody due to the "offense for which the sentence was imposed"; he was incarcerated for thirty months for violating the terms of his supervised release. And he was not incarcerated on "any other charge for which [he] was arrested after the commission of the offense" leading to the seventy-month sentence. Accordingly, Respondent is correct that it appears the BOP erroneously "credited the time Bass served on his 30-month sentence before he was sentenced to the 70-month sentence as presentence credit to be applied toward his 70-month sentence." (Doc. No. 8 at 4.)

And it seems that Mr. Bass' confusion lies in his belief that concurrent sentencing meant that he would serve a *total* sentence of seventy months on both the supervised release revocation violation and the new controlled substance charge. In his Petition, Mr. Bass claims it was "clear error" and "against the order of the court" for the BOP to calculate his seventy-month sentence from December 16, 2020, the day he pleaded guilty. (Doc. No. 2 at 6.) Instead, he believes his seventy-month sentence should be calculated from the day he was sentenced on the supervised release revocation petition, February 5, 2020. (*Id*.) However, as the United States Court of Appeals for the Fifth Circuit has opined, concurrent "sentences could not be concurrent in the sense of having the same starting date because a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." *U.S. v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980). Here, Mr. Bass was sentenced to seventy-months imprisonment on December 16, 2020. So it was on that date that his seventy-month sentence commenced.

Mr. Bass must certainly be angry and confused by the BOP's initial miscalculations adding nearly a year to his projected release date. But after very close scrutiny of the evidence in this case, I find the BOP correctly recalculated Mr. Bass' sentence. Accordingly, September 11, 2025,

5

is the correct projected release date and his Petition for Writ of Habeas Corpus must be dismissed with prejudice.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Bass has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.    Mr. Bass § 2241 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

2.    A certificate of appealability will not be issued.

SO ORDERED this 21st day of August 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE